May it please the Court, good morning. My name is William Herlock from the Mueller Law Firm, and I have the pleasure of representing Ms. Carlson, the appellant, in this matter before you this morning. We come before you and beseech this Court to correct what we believe is a procedural wrong which we believe was committed at the District Court level. By way of a short background, as with the numerous other cases from around the country, this case involves a personal injury product liability action arising from severe and permanent injuries sustained by Ms. Carlson who suffered from a pelvic organ prolapse and was implanted with what we believe is a defective and dangerous uphold vaginal support system. But her physician apparently didn't believe that because he testified he had independent knowledge of the risk and would prescribe the mesh notwithstanding the risk, given her complaints and what she presented with. He would still have prescribed it. Yes, Your Honor, that is part of the record. The record, quite frankly, is somewhat unclear as to some of these points, and the reliance issue, which actually gets to proximate cause, I was going to address as part of the application of the learned intermediary doctrine, which has been brought up in the papers by both parties. Since Judge Thacker has expressed an interest in it, you might want to go ahead and address it now. Absolutely. Thank you. The relevant testimony regarding Your Honor's question had to do with the impact and use, whether or not Dr. Connelly would have used this particular piece of mesh in Ms. Carlson. That really gets to reliance. The case law is pretty clear, actually, to the extent it is clear on some of these issues. There is actually a dearth of case law relevant to many of the issues we're presenting here this morning. Whether or not the physician would have used the product in question is one question. First of all, it is more of a question of fact to be decided by a trier of fact, but also the reliance component in the Barakas and Fussman courts were such that the courts believed, even where the prescribing physician stated that he was independently aware of the risks and would still use the product, as the Hawley v. Burroughs court has alluded to, that such use of that product would also depend on inadequate warning. Mr. Roth, did you cite evidence of reliance before the MDL court? We believe we did, Your Honor. I know there is a question as to what was cited between the two depositions. Then you should be prepared to address it. Yes, Your Honor. Absolutely. And you said you believe you did? We did, Your Honor. Forgive me. I don't ask you to help me with that now, but when you sit down for rebuttal, perhaps, that would be great. Yes, Your Honor. Get to the record site. Yes. Actually, for the sake of convenience, perhaps, I can turn to some of the relevant deposition testimony that I was going to introduce at this point. I don't quite understand what that's responsive to, and I believe Judge Thacker had any questions. Yes. I'm sorry. Just go ahead. Maybe we can figure out if we're communicating. Certainly. I'll read the relevant deposition testimony from the transcripts that we sent. I'm sorry. And what is this in response to? What subject are we on? Sure. This gets to, generally, Dr. Connelly's knowledge of both the use of the product, reliance, what warnings were provided. I think it's a good summary, perhaps. I see. So this is your argument. Okay. We're getting you back on track for your argument. Yes, Your Honor. Thank you. If I may, and I know there's been some inconsistency here in terms of what is actually been ruled on by the two different judges. We have Judge Goodwin at the MDL proceeding, and then we have Judge Voorhees. What is your inconsistency about? Well, I believe the inconsistency, Your Honor, is Judge Goodwin said that Dr. Connelly did not read the relevant information. Judge Voorhees said that he didn't read it, but he didn't rely on it. So even in the court orders below, there is some inconsistency. And the relevant portions that I would refer the court to with regards to the inconsistencies, and forgive me, Your Honor, I'm trying to get back on track here. Judge Goodwin, in granting the appellee's partial motion for summary judgment found, here the record is devoid of any evidence that would permit a reasonable juror to infer that Dr. Connelly read or relied on the DFU, the directions for use. That wasn't part of my question as to whether you cited evidence before Judge Goodwin at the MDL level. Yes, in terms of the deposition that was submitted of Dr. Connelly. Okay. And you cited that to Judge Goodwin? It was part of the record. The deposition transcript was part of it. And the answer is you didn't. I'm sorry? The question was did you cite evidence in the record to the MDL court? Of the reliance issue and reading? Is that the court's question? I'm sorry. Forgive me. I don't mean to be difficult. I must be being very unclear. No, no, no. You're absolutely fine. It's me, Your Honor. And, again, I'm just trying to play catch up here. The deposition transcript itself was part of that record. The specific citation came in our subsequent brief. My question. I'm sorry. No, no. Are you saying it was part of the summary judgment record? Yes, ma'am. And you're not relying on anything with regard to the trial record, are you? That's correct, Your Honor. Okay. Thank you. Thank you. Does that answer your question, Your Honor? Okay. And then in Judge Voorhees' order, if I could just finish that last thought, while Dr. Connelly's deposition testimony shows that he read the uphold, which is different than what Judge Goodwin said, there was a question about reliance. So contrary to the district court's factual findings, Dr. Connelly did, in fact, testify that he read the uphold DFU prior to appellant surgery, was familiar with its contents, relied on it, and making his decision to prescribe the uphold to Ms. Carlson. Indeed, the deposition transcript of Dr. Connelly taken on July 2, 2014, I'll read you relevant portions. Question by counsel. One page, please. I'm sorry. We are at appellant's brief, page 14, citing Joint Appendix 2080. Yes. And you reviewed these directions for use prior to performing the surgery on Ms. Carlson back in July 2002, correct? Answer from Dr. Connelly, correct. Question, and I'm now on page 15 of the brief, citing JA2136, Your Honor. Question by counsel. As a physician, did you reasonably rely on Boston Scientific Corporation to advise you of all the risks associated with their products? Answer from Dr. Connelly, yes. If you were given information about occurrence risks, would that potentially alter your risk-benefit analysis and implanting surgeon? That would have an impact. Very clearly stated by Dr. Connelly. All right. But he maintains his belief and his opinion that based on his clinical experience and his medical training, he still felt that the appellant was an appropriate candidate for the mesh and would still prescribe it for her, correct? Correct, Your Honor. I'm sorry. And part of that conclusion, if you will, further in his testimony, he discusses what he read literature. I'm sorry. No, please, Your Honor. No, please finish your answer. Okay, I'm sorry. He says that he did read literature, which in the Holly Court was specifically mentioned to preclude summary judgment where the prescribing physician stated he was independently aware of risks, but the court still found genuine issue of material fact because some of the material that were relied on by the doctor were in fact medical literature, as we have here. Our position is that the inadequacy of the warning undermines that potential reliance element, because there's an inadequate warning here. Where does the doctor say he relied on it? I'm sorry? Where does Dr. Connelly say he relied on it? It seems to me that you're trying to morph the fact that he read warnings into the fact that he relied on them. And respectfully, Your Honor, there is no line that's going to say he relied on it, unfortunately, but we believe the operative line in the deposition transcript is that that would have an impact. Did you ask him if he relied on it? I'm sorry, Your Honor? At his deposition, did anybody ask him if he relied on the material? In the context of the question that I just read. Other than that, I don't believe so. Christine, reading his whole testimony, it struck me that what the doctor was saying was, yeah, of course I have to consider that. That would have an impact. But when I read all the medical literature and we had the intraoperative decision, her gynecologist was there, and we made the decision that this was the way to go. So he wasn't relying on it. What he's saying is it was part, I mean, it was something I considered. And, Your Honor, again, it's similar to what the doctor in the Holley versus the Burroughs welcome case. Because of the, quote, medical literature, that encompasses DFU's other product inserts, if you will. And looking at the totality of that information has an impact on what a physician, a doctor such as Dr. Connelly here, would reasonably rely on. And taking that in its totality. Could I ask? Yes, Your Honor. You were reading from your deposition testimony? From the deposition testimony. Yes, I was, Your Honor. Actually, at the sites I just provided. Did you cite that testimony to the MDL court? Before Judge, I'm sorry. Before the MDL court. I was just going to say before Judge Goodwin, who is the MDL judge. The specific testimony as it's contained in here. Well, yes, as the federal rules require, a district court only has to consider cited materials. Your Honor, I believe there was some material that. I know Judge Goodwin is the MDL court. But in this case, at least in the way I've been reading the record, the MDL court, I mean, Judge Voorhees made the decision first. And then you went to Judge Goodwin for a motion to reconsider, right? It was the other way around, Your Honor. Judge Goodwin made the initial decision. And then the case was transferred for trial purposes to Judge Voorhees. All right. And Judge Voorhees. And then that's when you cited additional evidence. Yes, Your Honor. So in the motion to reconsider, and my apologies for my confusion there, but in the motion to reconsider, the standard is that it must be based on a subsequent trial producing substantially different evidence, a change in applicable law, or clear error causing manifest judgment. Which one of those are you relying on in your motion to reconsider? I'm sorry, Your Honor. The clear error. Causing manifest injustice. Here where the case, this particular claim was dismissed, we believe that that was an injustice, Your Honor, that had occurred. The treating physician testified that in his professional opinion, the mesh is a safe and effective option for treatment of pelvic orbic and prolapse in certain cases. And in particular, in her case, that's manifest injustice. Well, Your Honor, if I may, again, that statement by Dr. Connelly does not include what we believe an adequate warning on the particular issue here that we've looked at where we've presented evidence of why the warning was inadequate. And under the North Carolina statute on the learned intermediary doctrine, which is unclear as well as to its application, the statute itself particularly pertains to pharmaceutical manufacturers, there is a requirement that the warning be adequate. So there's a couple of different moving parts here. And I totally understand Your Honor's confusion with the record because, again, it's not a model of clarity. We believe there are several genuine issues of material fact that are present here that haven't been addressed, including, as I said, even a misinterpretation perhaps on some of the testimony that's been offered with regards to impact and how Dr. Connelly, forgive me, would have changed his course. So your best argument for what the record showed before the MDL court on summary judgment, that Dr. Connelly actually read the instructions and relied on them, is the deposition testimony that you cited at JA-262. Correct, Your Honor. And I had some additional excerpts that were part of that, if I may read those. Is there anything else you want us to look at on that issue? Because I took from your argument so far that with regards to what you put in front of Judge Goodwin at summary judgment, this is your best case, JA-262. Correct, Your Honor. And if that includes the excerpts that were in our opening brief, just to make sure we're on the same page if I could, the excerpts that we mentioned in our opening brief as well. Well, I need record sites. Absolutely. Yeah, if you can give us other record sites that you want us to look at which were on summary judgment in front of Judge Goodwin. Sure, Your Honor. Because it seemed to me that the testimony was kind of vague on summary judgment and later on at trial was perhaps more precise, but you were making this argument to Judge Goodwin on summary judgment and the trial was on the different theories of implied warranty and negligent design. Yes, Your Honor. And maybe not even so much procedurally the trial itself, but the motion for reconsideration perhaps before Judge Voorhees, that extra step, if you will, that we had between Judge Goodwin and the trial. Where the standard of review is abuse of discretion. On a motion for reconsideration, but a motion for summary judgment would have been de novo. It took us, though, to the motion to reconsider, so. I apologize, Your Honor. I was just trying to follow along the procedural here and keep up with. You have K.A. 262 and you were going to, I think, in response to Judge Keenan's question, cite anything else you had before Judge Goodwin. Yes. Preferably that you cited to. Forgive me, Your Honor? Preferably that you cited to. Yes. And see, the thing that I'm a little worried about, just to clarify, is that in your opening brief you cited things both from the trial testimony and the summary judgment evidence you put before the judge. And I want to make sure that what you're relying on today is the evidence on summary judgment that you presented to the judge. Yes, Your Honor. And just for further clarification, if I could, when we say summary judgment, are we referring to Judge Goodwin and Judge Voorhees on the reconsideration motion as well? Because I know there was some testimony that we cited in there, which is in our opening brief before this Court. I think that's the problem. You've blended them together. Okay. And they're not together. We are trying to identify what you cited to Judge Goodwin on summary judgment versus all this after-the-facts stuff that you threw in. Okay, before Judge Voorhees. Right. Okay. Thank you, Your Honor. Let's just hear what you cited to Judge Goodwin on summary judgment. Okay. In addition to JA-262. Thank you. And I can get the Court those citations in a supplemental submission, however the Court wants it. I can read it to you this morning, whenever. No. I notice I'm out of time. That's why I'm sorry I'm rushing. Well, why don't you present it on rebuttal? Okay. Thank you. Thank you, Your Honor. Mr. Rogers? Good morning. Good morning. May it please the Court, my name is Daniel Rogers with the law firm of Shekhardy & Bacon, and I have the pleasure of representing the Boston Scientific Corporation, the appellee and the defendant below. Your Honor, we believe that the summary judgment on the failure to warn claim should be affirmed and the ultimate judgment in favor of Boston Scientific should be affirmed. With respect to the summary judgment on the warnings claim. I'm sorry, it's me. Could you get a little closer to the microphone? I'm having trouble hearing this morning. Sorry. Sorry, Your Honor. Yeah. In this particular case, we believe that summary judgment was appropriate on the negligent failure to warn claim under North Carolina law because the record before Judge Goodwin that was cited to Judge Goodwin for summary judgment did not establish the essential elements of proximate cause under North Carolina failure to warn law. There was no evidence that was cited to Judge Goodwin that the prescribing physician, Dr. Kennelly, read or relied on the directions for use for the uphold product. And because of that, any additional warnings that were suggested by the plaintiff that they claimed should have been additionally provided so that the warning would have been adequate, those would not have been conveyed to Dr. Kennelly because he did not read or rely on the directions for use. And so, therefore, that breaks the causal chain and plaintiff has not established a prima facie case and under Zolotek's summary judgment was appropriate. And, in fact, the undisputed evidence before the district court, before the MDL court, as well as even considering the evidence that was submitted later on, of course, it's our argument that obviously the court should look to the summary judgment record. But even if you look at the entire record, it is undisputed that the additional warnings that plaintiff proposes should have been given would not have made a difference to Dr. Kennelly in his prescription decision. He says that he already knew of these risks and even knowing these risks, the uphold product was the best choice for Ms. Carlson's particular situation to treat her pelvic organ prolapse. And so, therefore, we believe that summary judgment was appropriately granted in this case. Can you address waiver at all? I'm still having a little problem with the evidence that's being relied on being properly presented to Judge Goodwin and, therefore, available for consideration on summary judgment in the first place. Yes, Your Honor. And so that relates to an issue that there appears to be a circuit split upon and we are not able to find anything that the Fourth Circuit has actually addressed it. You know, it's our position that even if you consider all the evidence, summary judgment was appropriate. But if you are only looking at, for example, we cited to a case from the D.C. Circuit and its strict construction of this rule, which we believe is appropriate and consistent with the standard for reconsideration that and the standard under Rule 36 and Celotek's case from the United States Supreme Court, that the burden is upon the party opposing summary judgment to cite the evidence at the time of summary judgment. And any evidence that is subsequently cited in a motion for reconsideration is inappropriate unless that evidence was not available by due diligence at the time of the original summary judgment response. Now, you understand that the Plaintiffs' Counsel has cited a case from another circuit, excuse me, I believe, the Fifth Circuit, which takes the position that, well, if the district judge accepts the evidence on reconsideration, then the appellate court should consider that. Well, Your Honor, we believe that is inconsistent with Rule 56. We believe that's inconsistent with Celotek's. And we believe that's inconsistent with the appropriate procedure for summary judgment because allowing parties to inject evidence that was available at the time of the summary judgment ruling later on in a motion for reconsideration allows endless motion practice. And, oh, well, you didn't like that evidence? Let me file a motion for reconsideration with new evidence. I'm sort of we do have cases in the Fourth Circuit that hold that a party, we've affirmed denials of motion to reconsider a grant of summary judgment where the party bearing the burden of production and cites evidence for the first time at the hearing on a motion for reconsideration. Unfortunately, I'm not familiar with the specific case law that you're talking about. I know that the case law that was cited in the reply brief, the Cook case, was not a case that involved a motion for reconsideration that came in after the fact. And I apologize, I guess my research wasn't comprehensive enough, Judge, but I didn't find any of the Fourth Circuit decisions particularly on that point. Well, my only point is if there's Fourth Circuit authority, there isn't a split in the circuits, and your search wasn't exhaustive, truly. And, Your Honor, I apologize. I researched it and one of my colleagues researched it, and if we didn't find that case, and the Plaintiff's Counsel hasn't cited that case in their brief or in their- Absolutely, Your Honor. Well, for all the reasons that I discussed, we believe that obviously the best rule is that the summary judgment record that was created at the time of the summary judgment ruling is the best. And if we look at that record that existed at the time of the summary judgment ruling, it is very clear that Dr. Kennelly would not have changed his prescription decision in this particular case. And this is consistent with the North Carolina failure to warn law that we've cited to the court. You know, North Carolina law looks to-applies the learned intermediary doctrine at common law. Have they applied it in the context of a device? Yes, Your Honor. There is the case which we've cited to the court, which is the Baracusas case, I believe, which was a pedicle screw case, which found that where the district court in North Carolina reviewed the law and predicted that the North Carolina Supreme Court would apply the learned intermediary doctrine in a medical device case. Right. We're assuming North Carolina doesn't have a certification statute, so we're relying on a Fourth Circuit district court's assumption of what the North Carolina Supreme Court would do if it were presented. Exactly, Your Honor, because the North Carolina courts have not specifically addressed it. But North Carolina courts have embraced the learned intermediary doctrine in all different types of case, products liability cases. They have codified the learned intermediary doctrine in prescription drug cases. And the district courts in North Carolina predict that it would be applied in medical device cases as well after reviewing all of the law. And there is nothing, no case law that I've seen that would indicate that any court in North Carolina, particularly the North Carolina Supreme Court, would not apply the learned intermediary doctrine. Because you're dealing with a prescription drug, excuse me, a prescription medical device here that can only be dispensed by a doctor. All of the communications about that go directly to the doctor. In fact, if you look at the record in this case, the plaintiff testified that she had no information directly from the manufacturer. All the information flowed through her doctor. And so, therefore, the learned intermediary doctrine applies legally as well as factually in this particular instance. And we would just point the court towards it. And I believe everybody agrees, and I think that even plaintiff's counsel agreed when he was up here, that Dr. Kennelly would still prescribe this device for the plaintiff and knowing all of the additional information. And so in those circumstances, there is no proximate cause. Summary judgment was appropriately entered. Reconsideration was properly denied because there was no new evidence presented to the trial court judge. I mean, there was new evidence that was available earlier that was presented to the trial court judge that is not a proper subject for reconsideration. But even if the court considers it, the trial judge accurately recounted Dr. Kennelly's testimony that he did not rely, that he would not have relied upon that additional information in changing his prescription decision because he already knew of all of the risks. And the intraoperative decision, as Judge Keenan has noted, was that this was the best thing for this plaintiff, giving her desires that she expressed before her surgery that she wanted to save her uterus. Her gynecologist was there, agreed with that assessment. This was the proper situation. So, therefore, there cannot be any proximate causal relationship between any allegedly inadequate warning and any of the injuries which the plaintiff alleged in this case. Thank you. Right up front, Your Honor, I'm going to have to ask for forgiveness. I wasn't able to get all the citations that the court had asked during the break. I thought counsel would talk a little bit more, so I apologize. I didn't get those for you. I'm happy to supplement the record with those, if the court so desires. There's a couple of different things, though, that, you know, I was trying to take notes as I was looking for the citations that the court had asked for. So forgive me for jumping around just a little bit. But in response to some of the things that appellee's counsel had raised, the North Carolina statute is very clear in that, quite frankly, it applies to no manufacturer or seller of a prescription drug. And there is a provision in here that also says, failing to provide a warning or instruction directly to a consumer if an adequate warning or instruction has been provided to the physician. Adequate warning is in the text of the statute. This is a 1995 statute. There is a dearth of case law out there that actually interprets this. The Baracus case was actually another district court in North Carolina. Back to the sites that are the evidence that you would have presented before Judge Goodwin in order for him to make his decision. Surely, in filing your response to the motion for summary judgment, you would have included everything you thought was important for Judge Goodwin to consider that motion for summary judgment, right? Yes, Your Honor. All right. So we need to look no further than your response that was filed on February 17, 2015, and any argument before Judge Goodwin to find those sites, correct? It's part of the record, yes, Your Honor. It would be part of our papers. Although I will add, though, again, that was a Two years ago, Philip. I'm sorry. You ought to have them today as well. It was two years ago. They are in our moving papers here, though, Your Honor. And again, the review of the district court level on the summary judgment brief, so that we're all on the same page, is de novo. And this information is now before the court.  It doesn't change the fact that the reliance in whether or not they were read were misinterpreted by the district court, particularly whether or not they were read. The case law is – I'm sorry. It doesn't make it relevant whether they were read if they weren't cited to the district court. That's the problem I'm having. And again, the transcripts were part of that record for summary judgment. You didn't attach the full transcript of the doctor's 2012 testimony to your response to the motion for summary judgment. I believe there were excerpts, Your Honor, that were included. No, you did not attach the entire transcript. So we just need to look at JA241, which is your response to defendant's motion for summary judgment, that attaches excerpts of the doctor's deposition for what it was you put before Judge Goodwin in your argument to him. Because you did not attach the full deposition, which was taken July 2, 2012, even though this was filed three years after that. I'm sorry I'm out of time, but may I address the court? Yes. The excerpts that were attached on the summary judgment level are the same excerpts that are attached before the court this morning. The testimony is there at the summary judgment level and at the court of appeals. Yes, it is. Okay, go ahead. No, I'm sorry. You were saying at the summary judgment level and... Today. All right, all right. You have the same, whether they're excerpts or it's the entire transcript. Well, there were other things that were attached to the summary judgment. No, not the entire transcript, because that's not what Judge Goodwin had. He only had excerpts. Okay. That's what has caused, as I said before you sat down before, that's what's caused any confusion here, because you have conflated what Judge Goodwin had before him, which was a limited amount, with now everything else you came up with in your motion for reconsideration and before this court. You sort of merged them all together in your brief before this court, and they really need to be separated. And now I think we understand how to separate them. Understood. I understand how to separate them, and I'm sure my colleagues are fully capable as well. Again, we're happy to provide a supplement with the citations if the court so desires. Again, I apologize. I wasn't able to find them on the fly this morning while I was sitting here. If I may just conclude. Yes. Okay, thank you, Your Honor, and I know I'm over time, so forgive me. Again, based on the papers submitted and the argument here today, appellant asks that this court reverse the orders regarding summary judgment on the failure to warrant claim, that Ms. Carlson be permitted to pursue her claim, and that this matter be remanded to the district court with instructions regarding the learned intermediary doctrine. Thank you, Your Honors. Okay, and I've just put that out. Sorry, Your Honor.
judges: Allyson K. Duncan, Barbara Milano Keenan, Stephanie D. Thacker